IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

FREEMAN W. STONE,

    Plaintiff,

vs.                                            CASE NO. 1:11-cv-13-MP-GRJ

MICHAEL J. ASTRUE,
Commissioner of Social Security

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals from a final decision of the Commissioner of Social Security (the "Commissioner") denying his applications for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.,* and for supplemental security income (SSI) benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.* The Commissioner has answered (Doc. 9), and both parties have filed briefs outlining their respective positions. (Docs. 16 and 17.) For the reasons discussed below, the undersigned recommends that the Commissioner's decision be **AFFIRMED.**

## I. PROCEDURAL HISTORY

Plaintiff filed his applications in January 2006, alleging an onset date of November 4, 2004, due to pain (arthritis) in his hands, neck, and lower back, and mental problems. R. 83, 94, 345-47. His applications were denied initially and on reconsideration. Following a hearing at which Plaintiff was not represented, an administrative law judge (ALJ) issued a decision finding that Plaintiff was not disabled at any time through the date of his decision. The Appeals Council remanded the case to

a different ALJ for another hearing because it was unclear whether Plaintiff acknowledged his right to representation and wanted to proceed with the hearing without a representative. R. 308-09.[1] Following another administrative hearing, at which Plaintiff was represented, the ALJ issued a decision on March 18, 2009, finding that Plaintiff was not under a disability as defined in the Act. R. 17-25. The Appeals Council denied review on November 19, 2010, rendering the ALJ's decision the final decision of the Commissioner. R. 8-10.

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4] The district court must view the evidence as a whole,

---

[1] In Plaintiff's memorandum in support of the Complaint, Plaintiff erroneously states that Plaintiff's second hearing took place following a remand by the U.S. District Court. *See* Doc. 16 at 11.

[2] *See* 42 U.S.C. § 405(g) (2000).

[3] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

taking into account evidence favorable as well as unfavorable to the decision.[5] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[6]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[7] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9] First, if a claimant is working at a substantial gainful activity, he is not disabled.[10] Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does

---

[5] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[6] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[8] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] 20 C.F.R. § 404.1520(b).

3

not have a severe impairment and is not disabled.[11] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[12] Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[13] Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16] The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[17]

---

[11] 20 C.F.R. § 404.1520(c).

[12] 20 C.F.R. § 404.1520(d).

[13] 20 C.F.R. § 404.1520(e).

[14] 20 C.F.R. § 404.1520(f).

[15] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); see also Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[16] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:
In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[17] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[18]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[21] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

### III.  SUMMARY OF THE RECORD

Because the Plaintiff only challenges the ALJ's analysis with regard to his mental impairment, and the subsequent use of the Grids, the Court will focus its discussion of the record on those issues.

---

[18] Wolfe v. Chater, 86 F.3d 1072, 1077 ( 11th Cir. 1996). See Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[19] Walker, 826 F.2d at 1003.

[20] Wolfe, 86 F.3d at 1077-78.

[21] See id.

### A. <u>Personal Background</u>

Plaintiff was born in July 1960, and was 48 years old at the time the ALJ rendered his decision.  He reported obtaining a GED while incarcerated in the 1980's. He alleged disability beginning November 4, 2004, due to pain in his hands, neck, and lower back. Plaintiff also stated that he experienced depression due to pain, mood swings, anxiety, and fatigue. Plaintiff reported past work experience as an attendant/custodian, mechanic, and junk yard parts puller.  He stated that he worked as a heavy equipment mechanic until the date of onset, although he acknowledged performing remodeling work "under the table" after the alleged onset date.  At the time of the hearing in February 2009, he testified that he had been drug-free for four years after participating in rehabilitation, and had quit drinking alcohol almost two years previously on his own.  R. 84, 125, 116-22, 40-41, 143, 343-47.

### B. <u>Mental Impairment</u>

Consulting psychologist Andres Nazario, Ph.D., examined Plaintiff in April 2006. Plaintiff reported a history of "borderline schizophrenic" and depression.  Plaintiff stated that he received psychiatric care while he was incarcerated for ten years in California. He reported that he has mood swings, and also reported a long history of alcohol and drug abuse.  He admitted to drinking the night before the exam, and Dr. Nazario noted a strong smell of alcohol.  Plaintiff told Dr. Nazario that he was able to go grocery shopping, cook, clean house, do laundry, wash dishes, and work in the yard.  He reported that he "always" felt anxious and constantly frustrated, and that he considered suicide daily, but that "it usually wears out by breakfast time."

6

Dr. Nazario's examination reflected that Plaintiff was oriented with intact recent and remote memory, was able to perform mental status tests without error or difficulty, appeared to possess average intelligence, and was able to understand and follow directions. Plaintiff appeared to have some difficulty concentrating; he was not persistent and his approach and his pace was adequate. There was no evidence of hallucinations, delusions, or obsessions. Dr. Nazario diagnosed Alcohol Dependence, Polysubstance Dependence, Bipolar Disorder NOS. He recommended a psychiatric consultation for assessment for medication, and treatment for drug and alcohol dependence. R. 189-90.

A Mental RFC Assessment completed by Angeles Alvarez-Mullin, M.D., in April 2006 indicated no significant limitations or no evidence of limitation in 15 of the 20 assessment categories, and only moderate limitations in: ability to understand and remember detailed instructions; ability to carry out detailed instructions; ability to maintain concentration for extended periods; ability to work in coordination with or proximity to others without being distracted by them; ability to set realistic goals or make plans independently of others. Dr. Alvarez-Mullins' narrative explanation stated that Plaintiff "appears capable of carrying out simple instructions; he may have difficulty with complex ones. Attention and concentration may be decreased [occasionally]. Although capable of appropriate brief/superficial interaction with others, [Plaintiff] may not be able to sustain prolonged/ongoing interaction with co-workers. Best suited for working by himself." R. 191-93.

On September 12, 2006, Dr. Nazario again examined Plaintiff and noted that he was alert and cooperative, was oriented with intact recent and remote memory, was

7

able to perform a series of mental tasks without error or difficulty, demonstrated an ability to concentrate during the interview, was persistent with adequate pace, appeared to be of average intelligence, and showed fair judgment and insight.  There was no evidence of hallucinations, delusions, or obsessions.  Dr. Nazario stated that Plaintiff appeared able to concentrate, understand and follow directions, and interact with others appropriately.  He diagnosed "Major Depressive Disorder, Recurrent, Moderate," and "Alcohol Dependence.  Rule out Bipolar Disorder."   He recommended psychiatric consultation and alcohol treatment.  R. 222-25.

A Psychiatric Review Technique completed by Dr. Steven Wise in September 2006  indicated mild restriction of activities of daily living, mild difficulties maintaining social functioning, moderate difficulties maintaining concentration, persistence, or pace, and no episodes of decompensation.  R. 236.  A Mental RFC Assessment completed by Dr. Wise indicated no significant limitations for 15 of the 20 assessment categories, and only moderate limitations in: ability to understand and remember detailed instructions; ability to carry out detailed instructions; ability to maintain concentration for extended periods; ability to complete a normal workday and workweek without interruptions and to perform at a consistent pace without unreasonable rest periods; ability to set realistic goals or make plans independently of others.  Dr. Wise's narrative explanation stated that "[c]laimant may have some concentration and memory deficits limiting him to simple tasks.  He interacts adequately with others.  He is capable of simple and routine tasks, and perhaps more were he to maintain sobriety."  R. 240-41.

Medical reports from Meridian-Behavioral Healthcare in April 2007 reflect that Plaintiff had good activities of daily living, appropriate manner, normal motor behavior,

grossly intact cognition, and normal speech. Plaintiff's progress was rated as a 7 on a scale of 1 to 10. Subsequent records from Meridian showed that Plaintiff obtained medication in August and September 2007, that his progress was rated as a 6 on a scale of 1 to 10 on August 7, 2007, that his progress was rated as a 9 on September 11, 2007, and that he was a "no show" on October 16, 2007. R. 285-95, 326-32.

### C. ALJ's Decision

Based on the hearing testimony and the medical evidence of record, the ALJ concluded at Step Two that Plaintiff had a severe combination of physical and mental impairments. The ALJ found that Plaintiff's mental impairments, however, imposed only "mild mental functional limitations." Specifically, the ALJ found mild limitations in activities of daily living, mild limitation of social functioning, and moderate limitation in Plaintiff's ability to adequately maintain his concentration, attention, and pace. R. 20. The ALJ concluded at Step Four that Plaintiff's impairments prevented him from returning to his past relevant work at the "heavy" exertional level, but that he retained the residual functional capacity for medium work. Given Plaintiff's RFC, age, education, work experience, and non-exertional limitations, the ALJ utilized the Medical Vocational Guidelines as a framework at Step Five to conclude that Plaintiff was not disabled. The ALJ stated that Plaintiff's non-exertional limitations had little or no effect on the occupational base of unskilled medium work, and did not utilize the testimony of a VE to determine that Plaintiff could perform other work. The ALJ concluded that Plaintiff "should be able to perform at least simple, repetitive, non-complex, unskilled, medium work in a regular work setting, without much interference from his non-exertional limitations." *Id*. at 20-25.

## IV.  DISCUSSION

Plaintiff contends that the ALJ committed reversible error because he did not properly assess Plaintiff's mental RFC at Step 4 of the analysis, and erred in relying on the Grids instead of the testimony of a VE at Step 5, in view of Plaintiff's "severe" non-exertional mental impairment.  Doc. 16.  Plaintiff contends that pursuant to *Winschel v. Commissioner*, 631 F.3d 1176 (11th Cir. 2011), the ALJ was required to utilize testimony from a VE because the ALJ found that Plaintiff had moderate limitations in concentration, persistence, and pace.

The Commissioner responds that the ALJ properly accounted for the mental limitations documented in the record in his RFC determination by concluding that Plaintiff could perform simple, repetitive, non-complex, and unskilled work.  The Commissioner contends that *Winschel* does not mandate the use of VE testimony in this case because the medical evidence supports a conclusion that Plaintiff could still perform simple routine tasks or unskilled work.  Doc. 17.

As to Plaintiff's first argument, substantial evidence supports that ALJ's assessment of the severity of Plaintiff's mental impairments as imposing only "mild mental functional limitations."   The ALJ noted that the medical evidence showed that Plaintiff's mental and emotional complaints were manageable with conservative medical care and medications, and that he had essentially normal activities of daily living.  The ALJ noted Dr. Nazario's assessments, which, as summarized above, showed that Plaintiff was alert and cooperative, oriented with intact memory, performed mental status tests adequately, had average intelligence, and could understand and follow

directions. In Dr. Nazario's second assessment, Plaintiff was able to concentrate, was persistent with adequate pace, appeared to be of average intelligence, showed fair judgment and insight, could understand and follow directions, and interact with others appropriately. The ALJ also considered Plaintiff's testimony that he worked after his alleged onset date of disability by doing some remodeling work and getting paid "under the table," an assertion that is inconsistent with Plaintiff's allegations of disabling physical and mental impairments since his onset date. The ALJ also noted Plaintiff's diagnosis of alcohol dependence, and observed that Plaintiff has a history of performing substantial gainful activity despite his history of substance abuse. In his assessment, Dr. Wise observed that Plaintiff appeared capable of at least simple and routine tasks, and perhaps more if he maintained sobriety. At the February 2009 hearing, Plaintiff testified that he had maintained sobriety for almost two years, and had been drug-free for four years.

As to Plaintiff's second argument, once the ALJ determined, based upon substantial evidence, that the Plaintiff's mental impairment did not significantly limit his ability to perform basic work activities, it was appropriate for the ALJ to use the Grids to determine the availability of jobs that the Plaintiff could perform with his exertional limitations.[22] "Before reaching the conclusion that the Grids will not be applied because the claimant alleges non-exertional limitations, those non-exertional limitations must be severe enough to restrict a full range of gainful employment at the designated level."[23]

---

[22] 20 C.F.R. §404.1569a(d).

[23] Kirk v. Secretary of HHS, 667 F.2d 635, 647 (6th Cir. 1981).

11

Additionally, relying upon *Winschel,* Plaintiff suggests that because the ALJ noted the Plaintiff had moderate limitations in concentration, persistence and pace, these limitations should have been included in the RFC and therefore the ALJ should have used a VE, instead of relying upon the Grids. While the Eleventh Circuit in *Winschel* required the ALJ to include limitations in concentration, persistence, and pace in a hypothetical question to a VE rather than simply limiting the claimant to simple, routine or unskilled work, *Winschel* does not create a bright-line rule that an ALJ must always utilize the testimony of a VE after making a finding that a claimant has moderately limited concentration, persistence, and pace and does not establish a rule that the ALJ cannot account for limitations in concentration, persistence and pace by limiting the claimant to simple, routine and unskilled work.  Rather, as the *Winschel* court pointed out, the problem there was that the ALJ failed to point to medical evidence suggesting that the claimant's ability to work was unaffected by the limitation. The *Winschel* panel expressly noted that limiting a claimant to unskilled work where the claimant has limitations in concentration, persistence and pace is appropriate and "sufficiently accounts for such limitation" in cases where the medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace. *Id*. at 1180. That is exactly what the ALJ did in this case.

Here, despite the fact that Plaintiff had moderate limitations in concentration, persistence and pace the ALJ concluded that the medical evidence and other evidence in the record nonetheless demonstrated that Plaintiff could still engage in simple,

routine tasks or unskilled work. In support of this conclusion the ALJ pointed to the following evidence: (1) Dr. Nazario's examination of Plaintiff, following which he concluded that Plaintiff was able to concentrate and was persistent with adequate pace, and could follow directions; (2) Dr. Alvarez-Mullins' statement that Plaintiff's attention and concentration may be decreased "occasionally" but that he could carry out simple instructions; (3) statements reflecting that Plaintiff's condition was amenable to conservative treatment, including medication and treatment for alcohol abuse; (4) Dr. Wise's statement that Plaintiff is capable of at least simple and routine tasks, and perhaps more with sobriety; and (5) Plaintiff's own statements that he had performed remodeling work after the alleged onset date and had maintained sobriety prior to the hearing.  This evidence is more than sufficient to satisfy the standard set forth in *Winschel*.  *See id*.

Thus, because the ALJ properly took into account any limitations with regard to concentration, persistence and pace by finding in the RFC that Plaintiff could engage in simple, routine tasks or unskilled work it was appropriate to rely upon the Grids because a limitation to simple routine tasks or unskilled work does not erode the occupational base in the Grids. The regulations support this view. Title 20 C.F.R. 404, Subpart P, Appendix 2, R. 203.00(a) &)(b), expressly provides that "[t]he functional capacity to perform medium work includes the functional capacity to perform sedentary, light, and medium work.  Approximately 2500 separate sedentary, light, and medium occupations can be identified, each occupation representing numerous jobs in the national economy which do not require skills or previous experience and which can be performed after a short demonstration or within 30 days . . . [t]he functional capacity to

13

perform medium work represents such substantial work capability at even the unskilled level that a finding of disabled is ordinarily not warranted in cases where a severely impaired person retains the functional capacity to perform medium work." The ALJ concluded that Plaintiff's non-exertional limitations had little or no effect on the occupational base of unskilled medium work. Accordingly, neither the record nor the Plaintiff's Memorandum in Opposition support a contrary conclusion.

The Court, therefore, concludes that there is substantial evidence to support the ALJ's finding that Plaintiff's mental limitations were not severe impairments. Consequently, the ALJ's use of the Grids, to determine the existence of jobs in the national economy that Plaintiff can perform, was not error.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED.**

**IN CHAMBERS** in Gainesville, Florida, on January 19th 2012.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.